UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES E. PENROD, Jr.,

Plaintiff,

Case No. 25-cv-00268-LA

v.

ANTHONY BARRIERE,
JASON KRUEGER,
KYLE KINZER,
MATTHEW CURI,
PEP MORETTI,
ROBERT CRAWFORD,

Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANTS' PROPOSED FINDINGS OF FACT

Plaintiff James E. Penrod, Jr. ("Penrod"), by and through his attorney Wesley E. Haslam, of the law firm Kravit, Hovel & Krawczyk s.c., submits the following response in opposition to Defendants' Proposed Findings of Fact:.

1. On September 15, 2023, Officer Barriere, Officer Krueger, Officer Kinzer, Officer Curi, Officer Morretti, and Officer Crawford were police officers employed by the Kenosha Police Department (KPD). (Plaintiff's Complaint, Dkt. No. 1 ¶ 6-11).

**RESPONSE:** Undisputed.

2. On September 15, 2023, Officer Barriere was a part of the KPD's canine unit and had a canine partner named Lupo. Lupo is a breed of dog called a Belgian Malinois which is a part of the shepherd family. Lupo is a trained police canine with specialized skills in apprehending suspects. (Barriere Decl. ¶ 2).

**RESPONSE:** Plaintiff does not dispute Defendant Barriere's role in the KPD, the name of the canine he used, nor the breed of canine he used. Plaintiff lacks knowledge to dispute the canine's skills and/or training.

3. In April 2022, Plaintiff, Penrod, plead guilty to "domestic abuse" (battery with domestic abuse modifier) and bail jumping. Following his guilty pleas, Penrod was incarcerated then released on probation. (Richer Decl. ¶ 2, Penrod Depo. p. 23:3-17, p. 24:1-4).

**RESPONSE:** Plaintiff admits that he has pled guilty to criminal charges in the past. Plaintiff objects, however, to the inclusion and consideration of the nature of his prior criminal history because such information would be substantially more prejudicial than probative and are not material to any issue presented on summary judgment.

4. On September 15, 2023, Penrod was on probation and was a registered sex offender. (Richer Decl. ¶ 3, Penrod Depo. p. 33:19-25, p. 38:1-16).

**RESPONSE:** Plaintiff admits to being on probation on September 15, 2023. Plaintiff objects, however, to the inclusion of and consideration of any characterization of him as a registered sex offender because such information would be substantially more prejudicial than probative and is not material to any issue presented on summary judgment.

5. Prior to his arrest on September 15, 2023, Penrod was informed by his probation officer that he had violated the terms and conditions of his probation, and that he had a warrant for his arrest. After learning he had an arrest warrant, Penrod "chopped" off his GPS monitoring ankle bracelet. (Richer Decl. ¶ 4, Penrod Depo. p. 34-37).

**RESPONSE:** Undisputed.

6. On September 15, 2023, KPD Officers were dispatched to the parking lot at the corner of 7th Avenue and Sheridan Road in Kenosha, Wisconsin to apprehend Penrod who was wanted for an active felony probation warrant. Officer Barriere was informed of Penrod's active felony probation warrant and Penrod's status as a sex offender. (Barriere Decl. ¶ 4).

**RESPONSE:** Plaintiff does not dispute the details of the Defendants' dispatch. Plaintiff objects, however, to the inclusion of and consideration of any characterization of him as a registered sex offender because such information would be substantially more prejudicial than probative and is not material to any issue presented on summary judgment.

7. While Penrod was at the parking lot on 7th Avenue, he saw a KPD squad car pull into the lot and knew the officer was searching for him. Penrod then fled the scene and hid in an area of vegetation and brush in Pennoyer Park so he could be hidden and not seen. (Richer Decl. ¶ 5, Penrod Depo. p. 59:1-15). Penrod wanted to escape and evade police officers so he did not go have to go to jail. (Richer Decl. ¶ 5, Penrod Depo. p. 56:11-14).

**RESPONSE:** Undisputed.

8. As he arrived on scene, Officer Barriere learned that Penrod had fled the parking lot on foot was running toward the thick vegetation of Pennoyer Park near the Pike River. (Barriere Decl. ¶ 5).

**RESPONSE:** Plaintiff disputes Defendant Barrier's representation of when he became aware Penrod had left the parking lot and that Penrod was *running*.

9. In order to locate Penrod, Officer Barrier parked his squad car on the Pike Trail facing south and began to search for Penrod with his canine partner, Lupo. Prior to searching for Mr. Penrod, Officer Barriere yelled a loud warning stating, "Kenosha Police K-9 Unit you in the bushes need to come out now or I will send this dog and you will be bit. James we know you are hiding you need to come out now or we will send the dog and you will be bit." (Barriere Decl. ¶ 8).

**RESPONSE:** Plaintiff does not dispute that Barriere was initially searching in the vicinity of the Pike Trail Plaintiff clarifies that this location was at least 320 feet from where Plaintiff was.

10. After his arrest, Penrod told officers that he knew the police were looking for him and that he knew a canine was being used to find him. (Curi Decl. ¶ 3).

**RESPONSE:** Plaintiff disputes this characterization of what he told officers as he was being asked multiple questions at once and his answers were misconstrued.

11. Pennoyer Park is a popular park in the City of Kenosha that has a bandshell for live music, park benches, playgrounds, a beach, and is routinely frequented by adults and children to fish. This location has portions that are heavily wooded with thick vegetation. This portion of the park slopes down toward the Pike River. On September 15, 2023, Officer Barriere observed people fishing and several families with children playing the park and along the river bank. (Barriere Decl. ¶ ¶ 6, 7).

**RESPONSE:** Plaintiff does not dispute that Pennoyer Park is a park in the City of Kenosha where people gather and fish. Plaintiff has no knowledge of what Barriere observed.

12. While on leash, Officer Barriere and Lupo began searching the thick grassy and wooded area of Pennoyer Park near the Kenosha Sportfishing and Conservation Salmon Pond and on the banks of the Pike River. (Barriere Decl. ¶ 9).

**RESPONSE:** Undisputed.

13. While searching for Penrod, Officer Barriere was at a tactical disadvantage because dense vegetation, uneven terrain, and limited visibility provided Penrod with natural cover, concealment, and the element of surprise that made Officer Barriere susceptible to being ambushed. (Barriere Decl. ¶ 11).

**RESPONSE:** Plaintiff disputes Defendant's characterization of his position or that officers were in a "tactical disadvantage."

14. Shortly after leaving the wood line, Officer Barriere, Officer Curi, and Lupo were informed by a citizen that there was a guy laying in the bushes south of their current location. Given the updated information, Officer Barrier, Lupo, and Officer Curi ran south and entered the bushes searching by the Pike River and working their way through the thick brush. (Barriere Decl. ¶ 10).

**RESPONSE:** Undisputed.

15. While searching in the thick vegetation, Penrod remained hidden. As Officer Barriere, Lupo, and Officer Curi attempted to locate Penrod in the tree line, Lupo located the suspect while Penrod was still hidden in the vegetation and not visible. (Barriere Decl. ¶ 12).

**RESPONSE:** Plaintiff disputes that he was found by the dog; Plaintiff asserts that he announced himself to officers when he heard they were nearby.

16. While Lupo was apprehending Penrod, Penrod and the location immediately adjacent to him was not visible. As such, Officer Barriere ordered Penrod to show his hands and get out of the bushes which he did not do. Because Penrod remained hidden and a threat, Lupo apprehended Penrod by using a bite-and-hold technique. (Barriere Decl. ¶ ¶ 13, 14).

**RESPONSE:** Disputed. Plaintiff obeyed all Defendants' commands to show his hands. Plaintiff was unable to get out of the bush because there was a large dog actively biting his legs and torso.

17. As such Officer Barrier moved closer to Penrod. Officer Barriere then grabbed Penrod, began getting his hands behind his back, and started placing Penrod in handcuffs. While handcuffs were being placed on Penrod, he continued to fight Lupo by forcefully kicking and moving his legs. (Barriere Decl. ¶ 15).

**RESPONSE:** Plaintiff disputed any allegation that he was "fighting" the dog. At no time did Plaintiff kick the dog or attempt to cause the dog harm. Plaintiff affirmatively asserts that he complied with orders to show his hands and to place his hands behind his back.

18. Once cuffed and completely secured, Officer Barriere immediately attempted to manually release Lupo from Penrod's leg. Due Penrod still being in his original concealed hiding spot deep in the vegetation of Pennoyer Park, Officer Barriere needed to maneuver Penrod out of the bushes to reach Lupo. (Barrier Decl. ¶ 16).

**RESPONSE:** Plaintiff disputes any claim the Defendants "immediately" attempted to "release" the dog. In fact, Defendant Barrier was actively telling the dog he was a "good boy" even after Plaintiff was in handcuffs and the dog was still actively biting him. Plaintiff further disputes the need to move him to a different location prior to "releasing" the dog.

19. While bringing Penrod out of his concealed position in the bushes, Penrod continued to fight Lupo. Once Penrod was secured and out of the bushes, Officer Barriere manually removed Lupo. (Barriere Decl. ¶ ¶ 16, 17).

**RESPONSE:** Plaintiff disputes any allegation that he was "fighting" the dog.

Dated this 1st day of June, 2026

KRAVIT, HOVEL & KRAWCZYK s.c.

*s/ Wesley E. Haslam*
Wesley H. Haslam
State Bar No. 1121993
Brian T. Fahl
State Bar No. 1043244

Kravit, Hovel & Krawczyk s.c.
825 North Jefferson Street, Suite 500
Milwaukee, Wisconsin 53202
(414) 271-7100 (telephone)
(414) 271-8135 (facsimile)
weh@kravitlaw.com
btf@kravitlaw.com

*Attorneys for Plaintiff*